IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HULSING ENTERPRISES, LLC, *et. al.*, ) | CASE NO. 5:21-cv-01536 |
| ) | |
| Plaintiff/ ) | JUDGE DAVID A. RUIZ |
| Counterclaim Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| FAZIO MECHANICAL SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendant/ ) | |
| Counterclaim Plaintiff/ ) | |
| Third-Party Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| DJ3 DELAWARE LLC, *et al.*, ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Third-Party Defendants. ) | |

Introduction

Before the Court is a motion by Defendant/Counterclaim Plaintiff and Third-Party Plaintiff Fazio Mechanical Services, Inc. (Fazio) to exclude the testimony and report of Henry Kugler (Kugler), the designated expert of Plaintiff/Counterclaim Defendants Hulsing Enterprises, LLC (Hulsing) and Earth Fare Management, Inc. (Earth Fare) (collectively Plaintiffs) as well as to exclude Plaintiffs' evidence of allegedly speculative or conjectural damages. R. 97. Hulsing in a single filing that addresses this and other pending motions,

1

opposes the motion. R. 103.

Plaintiffs have designated Kugler, the former chief operating officer of Plaintiff Earth Fare, as its sole expert witness. R. 97, Page ID#: 834. In that capacity, Kugler submitted an expert report (*id.*, Exhibit D, Page ID#: 1001-1012), was deposed (*id.*, Ex. C, Page ID#: 863-997) and testified at a *Daubert* hearing. R. 110. A supplement to the expert report was filed (R. 111), to which a motion to strike was filed (R. 112), followed by an opposition (R. 113) and a reply (R. 113). That motion is addressed in a separate order.

For the following reasons, Fazio's motion to exclude the testimony and expert report of Henry Kugler is granted in part and denied in part as set forth below.

Background facts

This matter arises out of Plaintiff Hulsing's contract with Defendant to install refrigeration systems in two closed grocery stores that Hulsing intended to reopen. R. 97, Page ID#: 832. During that project, under circumstances that are in dispute, the scope of the work being done by Fazio changed/expanded. *Id.*, Page ID#: 834. Moreover, certain equipment Hulsing had purchased for Fazio to install in the two stores proved to be problematic for various reasons, necessitating additional time and work by Defendant. *Id*.

Eventually, Plaintiffs refused payment on invoices submitted by Defendant, claiming the work being done had not been authorized. The Defendant then ceased work. *Id*. The present lawsuit ensued.

Motion in limine R. 97

The uncontested facts are that Kugler opined that the closing of the Earth Fare location after Fazio stopped work resulted in three categories of damages: (1) start-up/investment loss calculated from the known expenses incurred in constructing, marketing and opening the Earth

2

Fare store that was closed, *see*, R.97, at Page ID# 843 (citing record); (2) opportunity losses, which were calculated by reference to forecasted profits had the store opened on time, which forecast was, in turn, based on the average profit of other selected Earth Fare stores, *see*, *id.*, at Page ID#: 844 (citing record); and (3) operating losses, which are the alleged losses incurred from when the store opened until it closed. *Id.*, Page ID#: 844 (citing record). He also asserted various causation opinions.

To support a finding that this is an admissible expert opinion, Plaintiffs substantially argue that Kugler has "18 years of experience in the grocery and retail industry," most recently as chief operating officer of Earth Fare. R. 103, Page ID#: 1072. As such, Plaintiffs claim that Kugler possesses "invaluable knowledge and expertise in all aspects of the grocery store business," and that such specialized knowledge not only allows him to assess the factors affecting grocery store sales, such as the impact of prolonged closure on customer loyalty and retention. *Id*.

Defendant, for its part, contends that Kugler is not qualified as an expert as to the damages from the closing of a business. Fazio points to the fact that Kugler's academic qualifications do not include any training in accounting or economics, and that professionally he has never prepared a financial statement. R. 97, Page ID#: 836. In addition, Fazio notes that notwithstanding a purported expertise in consumer behavior, Kugler has no formal training in marketing, psychology or social psychology, nor has he conducted or reviewed studies into how prolonged closures effect customer loyalty. *Id*. Moreover, Fazio observes that Kugler did not independently prepare or develop the data used in preparing his report, but rather used data given him which he could not independently verify. *Id.*, Page ID#: 838.

3

Analysis

*Standard of review – Rules 701 and 702 Federal Rules of Evidence*

Rule 702

Rule 702 of the Federal Rules of Evidence permits an expert witness to provide testimony in opinion form if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reasonably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Supreme Court has interpreted this rule in *Daubert* as requiring that judges "ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). These *Daubert* requirements apply not only to "scientific" knowledge, but also to testimony based on "technical" or "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting Fed. R. Evid. 702). So understood, *Daubert* seeks to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading "junk science" on the other. *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009) (citations omitted).

There is no definitive checklist or test for striking this balance. *Daubert* itself, however, sets out some relevant factors to consider in making that decision, which include: (1) whether a theory or technique can be (or has been) tested; (2) whether a theory or technique has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether the theory or technique is generally accepted. *See, Daubert*, 509 U.S. at 593-94 (citations omitted). These factors are not exhaustive, and the inquiry must be "a flexible one," *Pluck v. BP Oil*

4

*Pipeline,* 640 F.3d 671, 677 (6th Cir. 2011) (citations omitted), for district courts must be mindful that their "gatekeeping inquiry must be 'tied to the facts of a particular case.'" *Kumho Tire*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591).

An expert witness must establish his expertise by reference to "knowledge, skill, experience, training or education" in order to qualify as an expert under Rule 702. That said, "there are many different kinds of experts and many kinds of expertise." *Kumho Tire*, 526 U.S. at 150. Still, "a witness is not an expert simply because he claims to be," *Rose v. Truck Ctrs., Inc.,* 338 Fed. App'x 528, 533 (6th Cir. 2010) (citation omitted). It remains the burden of the proponent of the testimony to establish its admissibility by a preponderance of proof. *See, Daubert*, 509 U.S. at 592 n. 10. And in the end, the issue with respect to expert testimony "is not the qualifications of the witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

Relevant factors in assessing qualifications of a purported expert include, among other things, "the length of an expert's experience in the field; whether she has previously been qualified by courts to testify as an expert; her education and training credentials as demonstrated through course work, hours of formal training, and designations and certificates." *TERA II LLC v. Rice Drilling D, LLC*, 2024 WL 621002, at *3 (S.D. Ohio Feb. 14, 2024) (citations omitted). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Caton v. Salamon*, 2024 WL 4226930, at *2 (S.D. Ohio Sept. 18, 2024) (citation omitted).

Moreover, "[w]here the reliability of the evidence is in dispute, it is more appropriate for

5

a judge to admit the evidence than to keep it from the factfinder because '[v]igorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional ways of attacking shaky but admissible evidence.'" *Great Northern Ins. Co. v. BMW of N. America, LLC*, 84 F.Supp. 2d 630, 637 (S.D. Ohio 2015) (quoting *Daubert*, 509 U.S. at 596). Indeed, it is well-settled that the "rejection of expert testimony is the exception rather than the rule." *Scrap Metal Antitrust Litigation*, 527 F.3d 517, 530 (6th Cir. 2008).

Rule 703 of the Federal Rules of Evidence identifies three types of evidence on which an expert's opinion may be based: firsthand observation of the witness; (2) evidence presented at trial and (3) data presented to the expert outside of court and other than his own perception. *See, Reives v. Smyrna,* 2024 WL 406758, at *2 (M.D. Tenn. Feb. 2, 2024) (citing Fed. R. Evid. 703 advisory committee note to proposed 1972 rules). Thus, although an expert opinion is not admissible if it is speculative or mere guess work, the court should admit expert testimony if it has a reasonable basis in fact. *See, United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (internal quotation omitted). In such circumstances, "any remaining challenges would go to the weight, as opposed to the admissibility, of the expert testimony." *Id*. (citation omitted).

However, it is often difficult to determine whether the question presented is one of admissibility for the judge or of weight for the jury. *Reives,* 2024 WL 4066758, at *2 (citation omitted). As the *Reives* court noted with approval, admissibility is a more difficult inquiry that hinges on an amalgam of the expert's qualifications, the topic of discussion, the basis of the expert's knowledge and the reliability of the methodology the expert employed. *Id*. But if the court finds it more likely than not that the expert has reliably applied the methodology to the facts of the case, then any remaining argument is over the weigh to be given to the expert's opinion, which is for the jury. *Id.*

6

Stated differently, in a case where an expert's opinion is offered as to the damages of lost profits, and where the damage calculation is based on data supplied by the plaintiff, together with assumptions by the expert and projections based on those assumption which are all disclosed to the jury, the opposing party may challenge the assumptions and cross-examine the expert about it, but the "damages calculation is nonetheless based on observable facts and data and, as such, has a reasonable factual basis." *Id*., at *5 (citation omitted). Thus, any challenge would go not to admissibility but to weight. *Id.* Jurors would be presented with a calculation premised on assumptions with which they may not agree, but not with any inaccurate fact. *Id*.

Rule 701

Distinct from expert testimony addressed in Fed R. Evid. 702, but related to it, is opinion testimony from a lay witness, which is the subject of Fed. R. Evid. 701. Fed R. Evid. 701 provides that a lay witness can "offer testimony in the form of an opinion" only when that testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The party offering testimony under Rule 701 must establish that all three requirements are satisfied. *Allied Erecting and Dismantling Co., Inc. v. United States Steel Corporation,* 2023 WL 53222113, at *6 (6th Cir. Aug. 18, 2023) (citation omitted).

Parties are not permitted to "bootstrap" expert testimony in the form of lay witness testimony. *United States v. Darji*, 609 Fed. App'x 30, 338 (6th Cir. 2015). However, "the distinction between lay witness and expert testimony 'is far from clear in cases where, as here, a witness with specialized or technical knowledge was also personally involved in the factual

7

underpinnings of the case.'" *Allied Erecting*, 2023 WL 53222113, at *7 (quoting *United States v. White,* 492 F.3d 380, 401 (6th Cir. 2007) (citations omitted)). In such cases, courts must distinguish between the witness's lay testimony, which results from a process of reasoning familiar in everyday life, and a witness's expert testimony, which results from a process of reasoning which can only be mastered by specialists in the field. *Id.* To that end, Rules 701 and 702 distinguish between lay and expert *testimony*, not *witnesses. Id*. Thus, the same witness may offer both lay opinion testimony and expert testimony, each of which would then be evaluated accordingly. *See, United States v. Whaley*, 860 F. Supp. 2d 584, 588 (E.D. Tenn. March 12, 2012).

As noted by the court in *Tire Discounters, Inc. v. People's Development Company, Inc.*, 2022 WL 1260283 (E.D. Tenn. March 29, 2022), "most courts have permitted the owner or officer of a business to testify as to the value or projected profits of a business without the necessity of qualifying the witness as an expert." *Id*., at *6 (quoting Advisory Committee Notes to Rule 701). In that regard, such testimony is admitted "not because of the experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his position in the business." *Id*. (internal citation and quotation omitted).

Thus, "the fact that the witness, by virtue of his or her experience in a business, has knowledge not possessed by the average person does not render the witness's opinion an expert opinion. Instead, one who works in a business may base lay opinion upon his or her 'particularized knowledge that the witness has by virtue of his or her position in the business.'" *United States v. Whately*, 860 F. Supp. 2d 584, 594-95 (E.D. Tenn. March 19, 2012). Stated differently, an employee of a business may provide lay opinion testimony regarding "the effect

8

of course of conduct on the business, if that opinion is based on a particularized knowledge gained as a result of employment in the business." *Id*., at 589. Significantly, "the fact that the witness providing lay opinion testimony conducted an investigation of the circumstances or data leading to the opinion 'after-the-fact' does not mean that the opinion was not based on the witness's personal perceptions," and so admissible under Fed. R. Evid. 701. *Id.*, at 594. Rather, an employee's testimony does not stray into expert opinion as long as he or she is testifying about *his or her investigation and conclusions therefrom*." *Id*., at 595 (citations omitted) (emphasis added).

      <u>Establishing damages – lost profits</u>

      Initially, it must be noted that this matter arises as a breach of contract claim that is before the Court under diversity jurisdiction. Accordingly, while Ohio law controls the substantive elements of the claims such as what constitutes a breach and what must be shown to prove damages from a breach, it is federal law that controls procedural questions such as the present issue of whether Kugler may testify as an expert as to damages arising from the alleged breach.

      Thus, Ohio law generally provides that "the measure of damages for breach of contract is the sum of actual and incidental or consequential losses arising from the breach less any costs that the injured party avoided by not having to perform." *Carpenter v. Liberty Insurance Corporation*, 413 F. Supp. 3d 727, 731 (S.D. Ohio Sept. 20, 2019) (citations omitted).

      As concerns a claim of lost profits arising from a breach of contract, under Ohio law a plaintiff must demonstrate: "(1) that the profits were within the contemplation of the parties at the time of the execution of the contract; (2) that the loss of profits is the reasonable result of the breach; and (3) that the profits are not remote or speculative." *Thomasville Furniture Industries,*

9

*Inc. v. The Elder-Beerman Stores, Corporation*, 250 B.R. 609, 620 (S.D. Ohio Sept. 28, 1998) (citing *Charles R. Combs Trucking, Inc. v. International Harvester Co.*, 112 Ohio St. 3d 241, 466 N.E. 2d 883, 885 (1984)). The "amount of lost profits, as well as their existence, must be demonstrated with reasonable certainty." *Id.* (citation omitted). That said, the evidence of lost profits "must be reasonable, but do[es] not need to be specific." *Id.* (citing and quoting *Combs*, 466 N.E. 2d at 887).

The supporting evidence, however, must prove the amount of lost profits by "more than a conclusory statement," but must do so "to a reasonable certainty." *Id.*, at 628-29 (citations omitted). "More is required of a plaintiff than merely his assertion (either directly or through an expert witness) that he would have made a particular amount of profits. Unless the figure is substantiated by calculations based on facts available or in evidence, the courts will properly reject it as speculative and uncertain." *Id.*, at 629 (quoting *Endersby v. Scheppe*, 73 Ohio App. 3d 212, 596 N.E. 2d 1081, 1084 (Allen Cty. 1991)).

"Lost profit damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, or other similar evidence." *Id.* (citations omitted). A claim for lost profits will therefore be legally sufficient in Ohio law if the plaintiff places "facts into evidence such that the finder of fact has an adequate factual basis upon which to calculate an award of such damages, *see Silver Cloud, Inc. v. Quiknut Div. of Scott and Fetzer Co.*, 35 F.3d 566 (6th Cir. 1994), as well as a means to calculate the amount of lost profits claimed." *Id.* (citation omitted).

In reaching any conclusion, courts must be mindful that proof of lost profits "often requires conjecture." *Id.*, at 630 (citation omitted). Profits, by nature, "are to some extent uncertain and conjectural, so that one cannot on that account, or on account of the difficulties in

10

the way of proof, be deprived of all remedies." *Id*. (quoting 13 O.Jur. at 155).

*Application of standards to Kugler*

<u>Qualification as an expert under Rule 702</u>

Initially, it must be re-emphasized that Kugler, by his own admission, lacks any recognized academic or professional training or experience in accounting, economics or consumer behavior. Further, as he also concedes, has never prepared a financial statement nor was he able to explain generally accepted accounting principles during the *Daubert* hearing. In addition, he also testified that his conclusion as to lost profits was based on the forecasted profits for the store that closed as compared to profits earned in other Earth Fare stores. Kugler did not select the stores for comparison based on any particular, recognized methodology. Rather, he simply identified select stores based on the year when they re-opened, without considering their proximity to the store location at issue, their economic sales patterns pre-dating their closure and re-opening, competitive issues in their respective marketplaces such as competition from other grocery stores, nor did he consider any other macro or micro economic factors that may impact an individual grocery store's performance.

As such, the evidence offered to support recognizing Kugler as an expert fails to clear the first step in a Rule 702 analysis which requires that the purported expert have "scientific, technical, or other specialized knowledge" that will assist the jury in understanding the evidence or determining a fact at issue. The fact that Kugler has management experience in the retail grocery business at Earth Fare does not, of itself, qualify him as an expert in quantifying the economic effect/lost profits of an entity that closed. *See*, *Whaley*, 860 F. Supp. 2d at 594-95 ("[T]he fact that the witness, by virtue of his or her experience in a business, has knowledge not possessed by the average does not render the witness's opinion an expert opinion.").

11

Indeed, the case cited by Plaintiff Hulsing (R. 103, Page ID#: 1072) to support finding that Kruger is qualified to testify as an expert, *Caton v. Salamon*, 2024 WL 4226930 (S.D. Ohio Sept. 18, 2024), actually proves that he is not so qualified. *Salamon* involves a claim that the plaintiff's civil rights were violated when she was pulled over by defendant on suspicion of an OVI violation. *Id.*, at *1. Plaintiff moved to exclude or limit the testimony of Joseph Shure, an attorney offered by defendants as an expert on police practices. *Id*. The court found that attorney Shure was qualified as an expert as to "police practices involving investigations into potential instance[s] of OVI by applying the NHTSA's OVI-detection standard." *Id.*, at *2. In so doing, the court found that although attorney Shure, a private defense attorney, had never before testified as an expert in court, his experience as the co-author of a published practice manual used in training Kentucky police officers in OVI enforcement, as well as providing instruction seminars on NHTSA standards for OVI to attorneys and law enforcement in Kentucky and Ohio, qualified him as an expert "with specialized knowledge in the application of NHTSA standards" to OVI that would help the trier of fact, as set out in Fed. R. Evid. 702.

Hulsing argues that just as attorney Shure was qualified as an expert on just the basis of his experience, so, too, should Kugler be qualified as an expert due to his 18 years of experience in the field of retail grocery stores. R. 103, Page ID#: 1073.

The key distinction between the present case and *Salamon* lies in the fact that attorney Shure had very specialized experience in a specific and discrete aspect of police procedure, as that court explicitly found, while Kugler is attempting to ground a specific opinion as to lost profits resulting from the closing of a particular store on his general experience of grocery store operations. While that experience may well be useful in forming an opinion as to the specific issue of grocery store operations and customer retention, Kugler's intended scope of testimony

12

is much broader—such as opining on the economic impact of delayed store re-opening and prolonged closure as well as the alleged causes of economic damages—which goes far beyond his background experience.

In this respect, Kugler is not similar to attorney Shure in *Salamon*, but is analogous to the testimony of an experienced mechanical engineer in *Burgett v. Troy-Bilt LLC*, 579 Fed. App'x 372 (6th Cir. 2014) who was excluded from offering expert testimony on how a lawnmower may have malfunctioned because, despite his background in mechanical engineering, he had no experience or qualifications in biomechanical issues or the human factors that can cause a lawnmower to malfunction – which factors themselves "are proper topics for expert testimony." *Id*., at 377.

Further, Kugler is also like the purported expert in *Travelers Property Casualty Insurance Company v. R-Tek Insulation, Inc*., 673 F. Supp. 3d 879 (N.D. Ohio May 17, 2023). There, plaintiff claimed that defendant's negligent installation of insulation around "canned' or "canister lights" caused a fire. *Id*., at 882. Defendant offered Paul Middlecoop, the former owner of R-Tek, as an expert. *Id.*, at 882-83. Although Middlecoop had no relevant degrees or certifications, the defendant asserted he was qualified as an expert due to his years of experience in the industry, his participation in training clinics and seminars relating to insulation installation, as well as familiarity with insulating around canister lights. *Id*., at 884.

The court found that based on these factors, Middlecoop was qualified as an expert on industry standards for installing installation. *Id*. However, because he was not a fire investigator and had no training or experience investigating the origins of fires, he lacked the requisite expertise to opine on the origins of the fire in that case. *Id*. Moreover, the court added, even if Middlecoop were qualified to opine on the origin of the fire, there is no evidence that his

13

conclusion would be "the product of reliable principles and methods recognized in the fire investigation industry." *Id*., at 885. As that court emphasized, the party seeking to have expert testimony admitted, "bears the burden of showing 'that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology ….'" *Id*. (quoting *Daubert v. Merrill Dow Pharm., Inc*. 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand)).

Here, as noted, even while accepting the previously cited level of uncertainty inherent in any calculation of lost profits, *see, e.g*., *Thomasville Furniture Industries*, *Inc*., 250 B.R. at 630, the lack of any recognized, accepted methodological standard for formulating Kugler's conclusion as to lost profit deprives the jury of an independent means of validating those findings and so renders them outside the scope of an expert opinion.

Finally, Kugler's situation is analogous to the proposed expert in *Young's Trading Company v. Fancy Import, Inc*., 2005 WL 5985552 (W.D. Tenn. Oct. 6, 2005). In that case, which involved plaintiff's claim for lost profits allegedly caused by defendant's misappropriation of trade secrets, plaintiff offered expert testimony from its bookkeeper, contending that her day-to-day experience with plaintiff's business and in preparing pro forma statements for business loans qualified her to give expert testimony as to lost profits. *Id*., at *4. The court disagreed and granted defendant's motion in limine to exclude her testimony as an expert. *Id*., at *6.

In particular, and analogous to the present case, the court found that while the bookkeeper did have experience with plaintiff's business and so could testify as to plaintiff's past sales and profits, "she has no personal experience in making the type of projections concerning lost profits that she makes in her expert report for [plaintiff]." *Id*., at *4. Further, the

14

court noted, "she has received little education or training that would assist her in making such projections." *Id*. Moreover, the court observed, that in calculating plaintiff's lost profits the bookkeeper made no attempt to incorporate research into the financial performance of other similar companies, including whether or not there had been an increase in competition from similar businesses, nor any analysis of financial performance of the economy as a whole in the relevant period. *Id*.

As such, the court stated that it was "concerned with the methodology employed by [the bookkeeper] and concludes that [her] expert testimony concerning [plaintiff's] lost profits is not sufficiently reliable to be admissible at trial." *Id*. (citing *Kumho Tire Co., Ltd.,* 526 U.S. at 149 (describing Fed. R. Evid. 702 as establishing "a standard of evidentiary reliability"). The court, however, was careful to point out that, because of her personal knowledge of plaintiff's finances, the bookkeeper was qualified to testify about any direct expenses incurred in responding to defendant launching a competing website, the amount that plaintiff's growth rate decreased during that period, and that any decrease coincided with defendant's act. *Id.*, at *5. Nevertheless, the court determined that because the bookkeeper "lacks any experience or training that qualifies her to testify as to the cause of [plaintiff's] decreased growth rate … [she] is precluded from offering expert testimony as to the cause of [plaintiff's] lost profits." *Id.* The reasoning of the court in *Young's Trading Company* is applicable here.

Therefore, Kugler, by virtue of his experience with Earth Fare and from personal knowledge may, with proper foundation, testify as a lay witness to direct costs/expenses incurred by Plaintiff in conducting operations at the locations at issue, identified in this case as alleged start-up investment losses, *see*, R. 106, Page ID#: 1097, and to how Plaintiff's financial position changed, if at all, during the period at issue, identified as operating losses, *see, id*. But,

15

because he does not qualify as an expert witness, he may not give an expert opinion as to any cause(s) for any alleged start-up or operating losses. Likewise, he is not qualified as an expert to opine as to allegedly lost future profits, identified in this case as opportunity losses, *see, id*. To this extent, Defendant Fazio's motion *in limine* is well-founded and is therefore granted in part as set forth above.

While Kugler is precluded under Fed. R. Evid. 702 from testifying as an *expert* as to the amount or cause of any lost profits, a separate issue remains as to his ability to offer a lay opinion under Fed. R. Evid. 701. As stated above, lay opinion testimony is distinct from expert testimony in that it is rationally based on the witness's perception and not on any scientific, technical or other specialized knowledge that would bring it under the scope of Fed. R. Evid. 702. As also noted, the key distinguishing feature between lay opinion and expert opinion is that lay opinion results from a reasoning process familiar in everyday life, while expert opinion is the result of reasoning which can only be mastered by an expert or specialist.

Significantly, as pointed out earlier, an employee of a business may offer lay opinion testimony concerning projected profits when that opinion is based on both the employees own experience in the business and his own investigation of the circumstances surrounding the business. *See, Whately*, 860 F. Supp. 2d at 594-95. Thus, Kugler may testify as a lay opinion witness under Fed. R. Evid. 701 concerning any investigation he personally made or ordered into the financial consequences resulting from the closing of the Earth Fare store in question and his personal conclusions from that investigation. That testimony will not be as an expert but will be solely based on his personal perceptions. *See, id*. at 594.

Accordingly, to the extent that Fazio's motion *in limine* seeks to totally exclude any testimony from Kugler about lost profits, it is denied in part for the reasons set forth.

16

Conclusion

For the reasons stated, Defendant Fazio's motion *in limine* (R. 97) is granted in part and denied in part as is more fully set forth above.

IT IS SO ORDERED.

Dated: October 19, 2025

*David A. Ruiz*
David A. Ruiz
United States District Judge

17